**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Wilus Institute of Standards and Technology Inc., | CASE NO. 2:26-cv-290 |
| *Plaintiff*, | |
| vs. | **Complaint for Patent Infringement** |
| TP-Link Corporation PTE Limited, TP-Link Technologies Co., Ltd., TP-Link Corporation Limited, TP-Link Lianzhou Co., Ltd., | **JURY DEMANDED** |
| *Defendants*. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Wilus Institute of Standards and Technology Inc. ("Wilus") files this complaint against Defendants TP-Link Corporation PTE Limited ("TPL PTE"), TP-Link Technologies Co., Ltd. ("TLT"), TP-Link Corporation Limited ("TPL HK"), and TP-Link Lianzhou Co., Ltd. ("TPL Lianzhou") (collectively, "TP-Link"), alleging infringement of U.S. Patent Nos. 10,651,992, 11,128,421, and 10,820,233. The Accused Products are Wi-Fi 6 (802.11ax) enabled devices used, offered for sale, sold, and/or imported by Defendants in the United States and supplied by Defendants to customers in the United States.

**BACKGROUND**

1.      This complaint arises from Defendants' infringement of the following United States patents owned by Wilus, each of which relates to wireless communications technology used in Wi-Fi 6 products and in Wi-Fi 7 products that support Wi-Fi 6 communications: United States Patent

Nos. 10,651,992 ("'992 patent"), 11,128,421 ("'421 patent"), and 10,820,233 ("'233 patent") (collectively, "Asserted Patents").

## NOTICE OF THE ASSERTED PATENTS

2.    The patented technologies which are the subject of this lawsuit are well known to Defendants.

3.    For example, on April 14, 2022, TP-Link was sent letters by Sisvel International S.A. ("Sisvel"), acting in its role as a licensing manager of certain patents related to the IEEE Wi-Fi 6 (802.11ax) standard. These letters conveyed Wilus's and Sisvel's belief that TP-Link products practiced Wilus patents and required a license to these Wilus patents. The letter contained a list of "patents essential to the 802.11ax standard," which included the '992, '421, and '233 patents. The letters identified specific TP-Link products as examples of products that implement essential features of the Wi-Fi 6 standard. They also contained a link to a brochure that included a table identifying specific sections and figures of the Wi-Fi 6 standard as illustrations of what the essential patents covered in the standard. The letter included an offer to grant a patent license for Wilus patents including the '992, '421, and '233 patents to TP-Link in exchange for royalty payments.

## PLAINTIFF WILUS AND THE ASSERTED PATENTS

4.    Plaintiff Wilus is a research and development company specializing in the development of new technologies related to wireless communications and multimedia, including Wi-Fi and other wireless protocols. Founded in 2012, Wilus has been at the forefront of research and development in wireless communications for more than a decade. The company is employee-owned, and its team currently consists of 20 engineers and inventors.

5.    Since its formation Wilus has made over 700 technical contributions to leading standards bodies that define international standards for technologies including cellular wireless,

wireless LAN, and multimedia compression. In particular, Wilus has played a crucial role in the development and standardization of Wi-Fi 6 technologies, contributing significantly to the enhanced speed, efficiency, capabilities, and performance of Wi-Fi 6 networks. Its work is significant in the context of the standards pertaining to Wi-Fi 6, both in terms of the number of technical contributions and in terms of the importance of those technical contributions to the standards.

6.     Wilus is a corporation organized under the laws of South Korea, with its principal place of business at 5F 216 Hwangsaeul-ro, Bundang-gu, Seongnam-si, Gyeonggi-do, 13595 Republic of Korea.

7.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 10,820,233, titled "Wireless communication method using frame aggregation and wireless communication terminal using same," and issued October 27, 2020. A copy of the '233 patent is attached as Exhibit 1.

8.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 10,651,992, titled "Wireless communication method and wireless communication terminal for coexistence with legacy wireless communication terminal," and issued May 12, 2020. A copy of the '992 patent is attached as Exhibit 2.

9.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 11,128,421, titled "Wireless communication method and wireless communication terminal for coexistence with legacy wireless communication terminal," and issued September 21, 2021. A copy of the '421 patent is attached as Exhibit 3.

## DEFENDANTS AND THE ACCUSED PRODUCTS

10.     On information and belief, Defendant TP-Link Corporation PTE Limited is a

corporation organized under the laws of Singapore, with its principal place of business located at 7 Temasek Boulevard, #29-03, Suntec Tower One, Singapore 038987.

11.    On information and belief, Defendant TP-Link Technologies Co., Ltd. is a corporation organized under the laws of the People's Republic of China, with its principal place of business located at South Building, No. 5 Keyuan Road, Central Zone, Science & Technology Park, Nanshan District, Shenzhen, Guangdong 518057, People's Republic of China.

12.    On information and belief, Defendant TP-Link Corporation Limited is a corporation organized under the laws of Hong Kong, with its principal place of business located at Suite 901, New East Ocean Centre, Tsim Sha Tsui, Hong Kong.

13.    On information and belief, Defendant TP-Link Lianzhou Co., Ltd. is a corporation organized under the laws of the People's Republic of China, with its principal place of business located at North, 25F, Lianzhou Building, No. 12, Cuixi Road, Science and Technology Park Community, Yuehai Street, Nanshan District, Shenzhen.

14.    On information and belief, TP-Link Corporation PTE Limited is the corporate parent and/or affiliate of TP-Link Technologies Co., Ltd., TP-Link Corporation Limited, and TP-Link Lianzhou Co., Ltd.

15.    On information and belief, TP-Link Lianzhou Co., Ltd. is a manufacturing and research and development arm of TP-Link that manufactures TP-Link products, including the Accused Products.

16.    On information and belief, Defendants distribute, offer for sale, sell, and import certain TP-Link electronics products, including the Accused Products, in the United States.

17.    The Accused Products are all of TP-Link's Wi-Fi 6 (802.11ax) enabled devices and Wi-Fi 7 (802.11be) enabled devices that support Wi-Fi 6 communications, including routers,

4

access points, mesh systems, range extenders, and other wireless networking devices, used, offered for sale, sold, and/or imported by Defendants in the United States. TP-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard, including but not limited to the following products: Archer AX10; Archer AX11000; Archer AX1500; Archer AX20; Archer AX21; Archer AX23; Archer AX3000; Archer AX50; Archer AX55; Archer AX6000; Archer AX72; Archer AX73; Archer AX80; Archer AX90; Archer AXE300; Archer AXE75; Archer AXE95; Archer BE11000 Pro; Archer BE230; Archer BE3600; Archer BE550; Archer BE600; Archer BE6500; Archer BE700; Archer BE700 Pro; Archer BE800; Archer BE805; Archer BE900; Archer BE9300; Archer GE650; Archer GE800; Archer GX90; Archer TBE400E; Archer TBE400UH; Archer TBE550E; Archer TBE552E; Archer TBE6500UH; Archer TX20E; Archer TX20U; Archer TX20U Plus; Archer TX3000E; Archer TX50E; Archer TX55E; Archer TXE72E; Archer TXE75E; AX1800; AX3600; AX6600; AXE11000; AXE16000; AXE5300; AXE5400; AXE7800; BE11000; BE14000; BE15000; BE19000; BE22000; BE24000; BE33000; BE5000; BE9700; Deco BE11000; Deco BE63; Deco BE65; Deco BE65 Pro; Deco BE65-Outdoor; Deco BE68; Deco BE85; Deco BE95; Deco W7200; Deco X15; Deco X20; Deco X25; Deco X4300 Pro; Deco X50; Deco X50-Outdoor; Deco X50-PoE; Deco X55; Deco X55 Pro; Deco X60; Deco X68; Deco X80-5G; Deco X90; Deco XE5300; Deco XE75; Deco XE75 Pro; EAP610; EAP610-Outdoor; EAP615-Wall; EAP620 HD; EAP650; EAP660 HD; EAP670; EAP690E HD; EAP723; EAP770; EAP772; EAP773; EAP775-Wall; EAP780; EAP783; EAP787; EB810v; EX220; EX230v; Festa F61; Festa F61-Outdoor; Festa F65; Festa F67; Festa F76; HB810; PGW2440 KIT; RE235BE; RE500X; RE505X; RE605X; RE615X; RE653BE; RE655BE; RE700X; RE715X; RE813XE; RE815X; RE815XE; TL-WPA7817 KIT; TL-WR1502X; and TL-WR3002X.

## JURISDICTION AND VENUE

18.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

19.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20.     This Court has personal jurisdiction over TP-Link in this action because TP-Link has committed acts of infringement within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over TP-Link would not offend traditional notions of fair play and substantial justice. TP-Link, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly does business or solicit business, engage in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to entities in Texas, and commits acts of infringement of Wilus's patents in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the asserted patents, including without limitation the TP-Link Wi-Fi 6 enabled devices accused of infringement in this case.

21.     TP-Link, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

22.     In the alternative, this Court has personal jurisdiction over TP-Link under Federal

6

Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law; TP-Link is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over TP-Link is consistent with the U.S. Constitution.

23.     Venue as to TP-Link is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). TP-Link has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the Asserted Patents.

24.     Defendants TPL PTE, TLT, TPL HK, and TPL Lianzhou are foreign corporations. Venue is proper as to foreign defendants in any district. 28 U.S.C. §§ 1391(c)(3).

## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '992 PATENT

25.     Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

26.     On May 12, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,651,992, titled "Wireless communication method and wireless communication terminal for coexistence with legacy wireless communication terminal." Exhibit 2.

27.     The '992 patent claims devices and methods used to implement the PHY layer of Wi-Fi 6 wireless LANs.

28.     Wilus is the owner of the '992 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

29.     The claims of the '992 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the

'992 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.    Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '992 patent, and Wilus is entitled to damages for Defendants' past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that TP-Link products practiced Wilus's '992 patent and offering to license Wilus's patents to TP-Link provided TP-Link with actual notice of infringement.

31.    Defendants have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '992 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '992 patent; and inducing and contributing to infringement by others of the claims of the '992 patent.

32.    The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including routers and other access point devices. On information and belief, Defendants use, import, offer for sale, and sell Accused Products in the United States, with knowledge, expectation, specific intent, and foresight that customers, distributors, counterparties and intermediaries will infringe the '992 Patent by importing, selling, offering to sell, using, and/or making Accused Products in the United States.

33.    The Accused Products satisfy all claim limitations of one or more claims of the '992 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused

Product will be material to all Accused Products. For example, the Accused Products include A wireless communication terminal that communicates wirelessly":



### Archer AX55

### AX3000 Dual Band Gigabit Wi-Fi 6 Router

- Next-Gen Gigabit Wi-Fi 6 Speed—2402 Mbps on 5 GHz and 574 Mbps on 2.4 GHz band ensure smoother streaming and faster downloads.[†]
- Connect More Devices—OFDMA technology increases capacity by 4 times to enable simultaneous transmission to more devices.
- Ultra-Low Latency—Enables more responsive gaming and video chatting.[‡]
- Expanded Wi-Fi Coverage—Four high-gain external antennas and Beamforming technology combine to extend strong, reliable Wi-Fi throughout your home.
- TP-Link HomeShield - Enhanced security defends against the latest cyber threats.[△]
- Improved Battery Life—Target Wake Time helps your devices to communicate more while consuming less power.
- Compatible with Alexa—Control your router via voice commands and make your life smarter and easier with Amazon Alexa.

(https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/)

34.    The Accused Products include "a transceiver" and "a processor":



(*Id*.)

35.    In the Accused Products, the processor is configured to "receive a non-legacy physical layer frame by using the transceiver":



**Figure 27-23—Timing boundaries for HE PPDU fields if midamble is not present**

(IEEE 802.11ax-2021, § 27.3.10)

36.     In the Accused Products, the processor is configured to "obtain a legacy signaling field including information decodable by a legacy wireless communication terminal from the non-legacy physical layer frame":

**27.3.11.5 L-SIG field**

The L-SIG field is used to communicate rate and length information. The structure of the L-SIG field is defined in Figure 17-5.

…

The L-SIG field shall be encoded, interleaved, and mapped following the steps described in 17.3.5.6, 17.3.5.7, and 17.3.5.8. The stream of 48 complex numbers generated by these steps is denoted by

$d_k, k = 0, ..., 47$ and is mapped to subcarriers [−26, 26]. In addition, values [−1, −1, −1, 1] are mapped to the extra subcarriers [−28, −27, 27, 28] of the L-SIG field of a 20 MHz HE PPDU. Subcarriers [−28, −27, 27, 28] are also BPSK modulated. Pilots shall be inserted as described in 17.3.5.9.

(IEEE 802.11ax-2021)

37.     In the Accused Products, the processor is configured to "obtain length information indicating information on a duration of the non-legacy physical layer frame, from the legacy signaling field":

For an HE TB PPDU, the LENGTH field is set to the TXVECTOR parameter L_LENGTH. For an HE SU PPDU, HE ER SU PPDU, and HE MU PPDU, the LENGTH field is set to the value given by the Equation (27-11).

$$Length = \left\lceil \frac{TXTIME - SignalExtension - 20}{4} \right\rceil \times 3 - 3 - m \qquad (27\text{-}11)$$

where
    TXTIME          is defined in 27.4.3 (in μs)

10

(IEEE 802.11ax-2021, § 27.3.11.5)

38.    In the Accused Products, the processor is configured to "obtain information other than information on the duration of the non-legacy physical layer frame based on a modulation method of a third symbol after the legacy signaling field and a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame, wherein the information other than information on the duration of the non-legacy physical layer frame indicates a format of a non-legacy signaling field included in the non-legacy physical layer frame":



**Figure 27-23—Timing boundaries for HE PPDU fields if midamble is not present**

(IEEE 802.11ax-2021, § 27.3.10)

For an HE SU PPDU, HE MU PPDU, and HE TB PPDU, the HE-SIG-A field is composed of two subfields, HE-SIG-A1 and HE-SIG-A2, each containing 26 data bits. The HE-SIG-A1 subfield is transmitted before the HE-SIG-A2 subfield. The data bits of the HE-SIG-A OFDM symbols shall be BCC encoded at rate $R = 1/2$, be interleaved, be mapped to a BPSK constellation, and have pilots inserted following the steps described in 17.3.5.6, 27.3.12.8, 17.3.5.8, and 17.3.5.9, respectively. The constellation mappings of the HE-SIG-A field in an HE SU PPDU, HE MU PPDU, and HE TB PPDU are shown in Figure 27-25. The first half and second half of the stream of 104 complex numbers generated by these steps (before pilot insertion) are divided into two groups of 52 complex numbers, where the first 52 complex numbers form the first OFDM symbol of the HE-SIG-A field and the second 52 complex numbers form the second OFDM symbol of the HE-SIG-A field, respectively.

For an HE ER SU PPDU, the HE-SIG-A field is composed of four subfields: HE-SIG-A1, HE-SIG-A1-R, HE-SIG-A2, and HE-SIG-A2-R. Each subfield contains 26 data bits. These four subfields are transmitted sequentially from HE-SIG-A1 to HE-SIG-A2-R. The data bits of the HE-SIG-A1 and HE-SIG-A2 subfields shall be BCC encoded at rate $R = 1/2$, be interleaved, be mapped to a BPSK constellation, and have pilots inserted. The HE-SIG-A1-R subfield has the same encoded bits as the HE-SIG-A1 subfield, and the encoded bits shall be mapped to a QBPSK constellation without interleaving and have pilots inserted. The constellation mappings of the HE-SIG-A field in an HE ER SU PPDU are shown in Figure 27-25. The QBPSK constellation on the HE-SIG-A1-R subfield is used to differentiate between an HE ER SU PPDU and an HE MU PPDU when $m = 1$ in Equation (27-11). The HE-SIG-A2-R subfield has the same encoded bits as the HE-SIG-A2 subfield, and the encoded bits shall be mapped to a BPSK constellation without interleaving and have pilots inserted. BCC encoding, data interleaving, constellation mapping, and pilot insertion follow the steps described in 17.3.5.6, 27.3.12.8, 17.3.5.8, and 17.3.5.9, respectively.



**Figure 27-25—Data subcarrier constellation of HE-SIG-A symbols**

(IEEE 802.11ax-2021, § 27.3.11.7.4)

$$\text{Length} = \left\lceil \frac{\text{TXTIME} - \textit{SignalExtension} - 20}{4} \right\rceil \times 3 - 3 - m \qquad (27\text{-}11)$$

where
    TXTIME           is defined in 27.4.3 (in µs)
    $m$                is 1 for an HE MU PPDU and HE ER SU PPDU and 2 otherwise

(IEEE 802.11ax-2021, § 27.3.11.5)

39.      In the Accused Products, the processor is configured to "determine the number of symbols of data of the non-legacy physical layer frame according to a following equation,

$$N_{\text{SYM}} = \left\lfloor \left( \frac{\text{L\_LENGTH} + m + 3}{3} \times 4 - T_{\text{HE\_PREAMBLE}} \right) / T_{\text{SYM}} \right\rfloor - b_{\text{PE\_Disambiguity}}$$

where $\lfloor x \rfloor$ denotes a largest integer less than or equal to x, L_LENGTH denotes the length information, m denotes a

value obtained by subtracting the remaining value from the data size transmittable by a symbol of the legacy physical layer frame, $b_{PE\_Disambiguity}$ denotes a value of PE Disambiguity field, $T_{HE\_PREAMBLE}$ denotes a duration of non-legacy preamble of the non-legacy physical layer frame, $T_{SYM}$ denotes a duration of a symbol of the data of the non-legacy physical layer frame":

### 27.3.13 Packet extension

. . .

The receiver computes $N_{SYM}$, $T_{PE}$, and $N_{MA}$ using Equation (27-119), Equation (27-120), and Equation (27-122), respectively.

$$N_{SYM} = \left\lfloor \left( \frac{L\_LENGTH + m + 3}{3} \times 4 - T_{HE\text{-}PREAMBLE} - N_{MA}N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM} \right) / T_{SYM} \right\rfloor - b_{PE\text{-}Disambiguity} \quad (27\text{-}119)$$

$$T_{PE} = \left\lfloor \frac{\left( \frac{L\_LENGTH + m + 3}{3} \times 4 - T_{HE\text{-}PREAMBLE} \right) - N_{SYM}T_{SYM} - N_{MA}N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}}{4} \right\rfloor \times 4 \quad (27\text{-}120)$$

where

L_LENGTH        is the value indicated by the LENGTH field of the L-SIG field

$T_{HE\text{-}PREAMBLE} = $ (27-121)

$$\begin{cases} T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + T_{HE\text{-}STF\text{-}T} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE TB PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE SU PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + N_{HE\text{-}SIG\text{-}B}T_{HE\text{-}SIG\text{-}B} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE MU PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A\text{-}R} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE ER SU PPDU} \end{cases}$$

where

$T_{RL\text{-}SIG}$, $T_{HE\text{-}STF\text{-}T}$, $T_{HE\text{-}STF\text{-}NT}$, $T_{HE\text{-}LTF\text{-}SYM}$, $T_{HE\text{-}SIG\text{-}A}$, $T_{HE\text{-}SIG\text{-}A\text{-}R}$, and $T_{HE\text{-}SIG\text{-}B}$ are defined in Table 27-12

$N_{HE\text{-}SIG\text{-}B}$ and $N_{HE\text{-}LTF}$ are defined in Table 27-15

$b_{PE\text{-}Disambiguity}$    is the value indicated by the PE Disambiguity subfield of the HE-SIG-A field for an HE SU, HE ER SU, or HE MU PPDU or the value indicated by the PE Disambiguity subfield in the Common Info field in the Trigger frame (see Table 9-29g) for an HE TB PPDU

. . .

$$N_{MA} = \begin{cases} 0, \text{ if Doppler} = 0 \\ max\left( 0, \left\lfloor \left( \frac{L\_LENGTH + 3 + m}{3} \times 4 - T_{HE\text{-}PREAMBLE} - (b_{PE\text{-}Diambiguity} + 2) \cdot T_{SYM} \right) / T_{MA} \right\rfloor \right), \text{ if Doppler} = 1 \end{cases} \quad (27\text{-}122)$$

(IEEE 802.11ax-2021)

40.    In the Accused Products, "the PE Disambiguity field is set based on the duration of a symbol of the data of the non-legacy physical layer frame and an increment of duration to set a value of the length information based on a duration of a symbol of the legacy physical layer frame."

> The PE Disambiguity field of the HE-SIG-A field for an HE SU, HE ER SU (see Table 27-18), or HE MU PPDU (see Table 27-20) shall be set to 1 if the condition in Equation (27-118) is met; otherwise, it shall be set to 0.
>
> The PE Disambiguity subfield in the Common Info field of the Trigger frame (see Table 9-29g) shall be set to 1 if the condition in Equation (27-118) is met for the HE TB PPDU solicited by the Trigger frame. Otherwise, it shall be set to 0.

(27-118)

$$T_{PE} + 4 \times \left( \left\lceil \frac{\text{TXTIME} - SignalExtension - 20}{4} \right\rceil - \left( \frac{\text{TXTIME} - SignalExtension - 20}{4} \right) \right) \geq T_{SYM}$$

where
$T_{PE}$    is the PE field duration
$T_{SYM}$    is the symbol duration of the Data field as defined in 27.3.9

(IEEE 802.11ax-2021, § 27.3.13)

41.    Defendants have also knowingly and intentionally induced and contributed to infringement of the '992 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '992 patent and the infringing nature of the Accused Products at least because TLT had received the April 8, 2022, letter from Sisvel identifying the '992 patent as "essential to the 802.11ax standard" and identifying examples of TP-Link products that implement essential features of the standard.

42.    Despite this knowledge of the '992 patent, Defendants have continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '992 patent. Defendants have done so knowing and intending that their customers would commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '992 patent, thereby

14

specifically intending for and inducing their customers to infringe the '992 patent through the customers' normal and customary use of the Accused Products.

43. On information and belief, the Accused Products contain components that constitute a material part of the '992 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendants have sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '992 patent.

44. On information and belief, Defendants' infringement has and continues to be willful. Defendants, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '992 patent.

45. Defendants have induced, and continue to induce, infringement of the '992 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

46. TP-Link and its customers benefit from the use of the inventions claimed in the '992 patent. On information and belief, these benefits include faster throughput, higher capacity, broader coverage, and improved coexistence when using Wi-Fi 6 communications.

47. Wilus has been damaged by Defendants' willful infringement of the '992 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

15

48.     TP-Link's acts of infringement of the '992 patent have caused and continue to cause Wilus to suffer irreparable harm for which there is no adequate remedy at law. TP-Link's continued infringement causes harm to Wilus in the form of loss of goodwill, damage to reputation, loss of business opportunities, and inadequacy of money damages. Monetary damages are insufficient to compensate Wilus for these harms. Unless TP-Link's acts of infringement are permanently enjoined by this Court, TP-Link will continue to cause immediate and irreparable harm to Wilus for which there is no adequate remedy at law.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '421 PATENT

49.     Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

50.     On September 21, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,128,421, titled "Wireless communication method and wireless communication terminal for coexistence with legacy wireless communication terminal." Exhibit 3.

51.     The '421 patent claims devices and methods used to implement the PHY layer of Wi-Fi 6 wireless LANs.

52.     Wilus is the owner of the '421 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

53.     The claims of the '421 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '421 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of

claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.     Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '421 patent, and Wilus is entitled to damages for Defendants' past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that TP-Link products practiced Wilus's '421 patent and offering to license Wilus's patents to TP-Link provided TP-Link with actual notice of infringement.

55.     Defendants have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '421 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '421 patent; and inducing and contributing to infringement by others of the claims of the '421 patent.

56.     The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including routers and other access point devices. On information and belief, Defendants use, import, offer for sale, and sell Accused Products in the United States, with knowledge, expectation, specific intent, and foresight that customers, distributors, counterparties and intermediaries will infringe the '421 Patent by importing, selling, offering to sell, using, and/or making Accused Products in the United States.

57.     The Accused Products satisfy all claim limitations of one or more claims of the '421 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal that communicates wirelessly":



### Archer AX55
### AX3000 Dual Band Gigabit Wi-Fi 6 Router

- Next-Gen Gigabit Wi-Fi 6 Speed—2402 Mbps on 5 GHz and 574 Mbps on 2.4 GHz band ensure smoother streaming and faster downloads.[†]
- Connect More Devices—OFDMA technology increases capacity by 4 times to enable simultaneous transmission to more devices.
- Ultra-Low Latency—Enables more responsive gaming and video chatting.[‡]
- Expanded Wi-Fi Coverage—Four high-gain external antennas and Beamforming technology combine to extend strong, reliable Wi-Fi throughout your home.
- TP-Link HomeShield - Enhanced security defends against the latest cyber threats.[△]
- Improved Battery Life—Target Wake Time helps your devices to communicate more while consuming less power.
- Compatible with Alexa—Control your router via voice commands and make your life smarter and easier with Amazon Alexa.

(https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/)

58.    The Accused Products include "a transceiver" and "a processor":



(*Id.*)

59.    In the Accused Products, the processor is configured to "receive a non-legacy physical layer frame by using the transceiver":

18



**Figure 27-23—Timing boundaries for HE PPDU fields if midamble is not present**

(IEEE 802.11ax-2021, § 27.3.10)

60.     In the Accused Products, the processor is configured to "obtain a legacy signaling field including information decodable by a legacy wireless communication terminal from the non-legacy physical layer frame":

### 27.3.11.5 L-SIG field

The L-SIG field is used to communicate rate and length information. The structure of the L-SIG field is defined in Figure 17-5.

…

The L-SIG field shall be encoded, interleaved, and mapped following the steps described in 17.3.5.6, 17.3.5.7, and 17.3.5.8. The stream of 48 complex numbers generated by these steps is denoted by

$d_k$, $k = 0, \ldots, 47$ and is mapped to subcarriers [−26, 26]. In addition, values [−1, −1, −1, 1] are mapped to the extra subcarriers [−28, −27, 27, 28] of the L-SIG field of a 20 MHz HE PPDU. Subcarriers [−28, −27, 27, 28] are also BPSK modulated. Pilots shall be inserted as described in 17.3.5.9.

(IEEE 802.11ax-2021)

61.     In the Accused Products, the processor is configured to "obtain length information indicating information on a duration of the non-legacy physical layer frame, from the legacy signaling field":

For an HE TB PPDU, the LENGTH field is set to the TXVECTOR parameter L_LENGTH. For an HE SU PPDU, HE ER SU PPDU, and HE MU PPDU, the LENGTH field is set to the value given by the Equation (27-11).

$$\text{Length} = \left\lceil \frac{TXTIME - SignalExtension - 20}{4} \right\rceil \times 3 - 3 - m \qquad (27\text{-}11)$$

where
    TXTIME           is defined in 27.4.3 (in μs)

19

(IEEE 802.11ax-2021, § 27.3.11.5)

62.    In the Accused Products, the processor is configured to "obtain information other than information on the duration of the non-legacy physical layer frame based on a modulation method of a third symbol after the legacy signaling field and a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame, wherein the modulation method is Binary Phase Shift Keying (BPSK) or Quadrature Binary Phase Shift Keying (QBPSK), wherein the information other than information on the duration of the non-legacy physical layer frame indicates a format of a non-legacy signaling field included in the non-legacy physical layer frame":



**Figure 27-23—Timing boundaries for HE PPDU fields if midamble is not present**

(IEEE 802.11ax-2021, § 27.3.10)

For an HE SU PPDU, HE MU PPDU, and HE TB PPDU, the HE-SIG-A field is composed of two subfields, HE-SIG-A1 and HE-SIG-A2, each containing 26 data bits. The HE-SIG-A1 subfield is transmitted before the HE-SIG-A2 subfield. The data bits of the HE-SIG-A OFDM symbols shall be BCC encoded at rate $R = 1/2$, be interleaved, be mapped to a BPSK constellation, and have pilots inserted following the steps described in 17.3.5.6, 27.3.12.8, 17.3.5.8, and 17.3.5.9, respectively. The constellation mappings of the HE-SIG-A field in an HE SU PPDU, HE MU PPDU, and HE TB PPDU are shown in Figure 27-25. The first half and second half of the stream of 104 complex numbers generated by these steps (before pilot insertion) are divided into two groups of 52 complex numbers, where the first 52 complex numbers form the first OFDM symbol of the HE-SIG-A field and the second 52 complex numbers form the second OFDM symbol of the HE-SIG-A field, respectively.

20

For an HE ER SU PPDU, the HE-SIG-A field is composed of four subfields: HE-SIG-A1, HE-SIG-A1-R, HE-SIG-A2, and HE-SIG-A2-R. Each subfield contains 26 data bits. These four subfields are transmitted sequentially from HE-SIG-A1 to HE-SIG-A2-R. The data bits of the HE-SIG-A1 and HE-SIG-A2 subfields shall be BCC encoded at rate $R = 1/2$, be interleaved, be mapped to a BPSK constellation, and have pilots inserted. The HE-SIG-A1-R subfield has the same encoded bits as the HE-SIG-A1 subfield, and the encoded bits shall be mapped to a QBPSK constellation without interleaving and have pilots inserted. The constellation mappings of the HE-SIG-A field in an HE ER SU PPDU are shown in Figure 27-25. The QBPSK constellation on the HE-SIG-A1-R subfield is used to differentiate between an HE ER SU PPDU and an HE MU PPDU when $m = 1$ in Equation (27-11). The HE-SIG-A2-R subfield has the same encoded bits as the HE-SIG-A2 subfield, and the encoded bits shall be mapped to a BPSK constellation without interleaving and have pilots inserted. BCC encoding, data interleaving, constellation mapping, and pilot insertion follow the steps described in 17.3.5.6, 27.3.12.8, 17.3.5.8, and 17.3.5.9, respectively.



**Figure 27-25—Data subcarrier constellation of HE-SIG-A symbols**

(IEEE 802.11ax-2021, § 27.3.11.7.4)

$$\text{Length} = \left\lceil \frac{\text{TXTIME} - SignalExtension - 20}{4} \right\rceil \times 3 - 3 - m \qquad (27\text{-}11)$$

where
  TXTIME      is defined in 27.4.3 (in µs)
  $m$         is 1 for an HE MU PPDU and HE ER SU PPDU and 2 otherwise

(IEEE 802.11ax-2021, § 27.3.11.5)

63.    In the Accused Products, the processor is configured to "determine the number of symbols of data of the non-legacy physical layer frame according to a following equation,

$$N_{\text{SYM}} = \left\lfloor \left( \frac{\text{L\_LENGTH} + m + 3}{3} \times 4 - T_{\text{HE\_PREAMBLE}} \right) / T_{\text{SYM}} \right\rfloor - b_{\text{PE\_Disambiguity}}$$ where $\lfloor x \rfloor$ denotes a

largest integer less than or equal to x, L_LENGTH denotes the length information, m denotes a

value obtained by subtracting the remaining value from the data size transmittable by a symbol of the legacy physical layer frame, $b_{PE\_Disambiguity}$ denotes a value of PE Disambiguity field, $T_{HE\_PREAMBLE}$ denotes a duration of non-legacy preamble of the non-legacy physical layer frame, $T_{SYM}$ denotes a duration of a symbol of the data of the non-legacy physical layer frame":

### 27.3.13 Packet extension

. . .

The receiver computes $N_{SYM}$, $T_{PE}$, and $N_{MA}$ using Equation (27-119), Equation (27-120), and Equation (27-122), respectively.

$$(27\text{-}119)$$

$$N_{SYM} = \left\lfloor \left( \frac{L\_LENGTH + m + 3}{3} \times 4 - T_{HE\text{-}PREAMBLE} - N_{MA}N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM} \right) / T_{SYM} \right\rfloor - b_{PE\text{-}Disambiguity}$$

$$(27\text{-}120)$$

$$T_{PE} = \left\lfloor \frac{\left( \frac{L\_LENGTH + m + 3}{3} \times 4 - T_{HE\text{-}PREAMBLE} \right) - N_{SYM}T_{SYM} - N_{MA}N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}}{4} \right\rfloor \times 4$$

where

L_LENGTH    is the value indicated by the LENGTH field of the L-SIG field

$$T_{HE\text{-}PREAMBLE} = \qquad\qquad (27\text{-}121)$$

$$\begin{cases} T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + T_{HE\text{-}STF\text{-}T} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE TB PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE SU PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A} + N_{HE\text{-}SIG\text{-}B}T_{HE\text{-}SIG\text{-}B} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE MU PPDU} \\ T_{RL\text{-}SIG} + T_{HE\text{-}SIG\text{-}A\text{-}R} + T_{HE\text{-}STF\text{-}NT} + N_{HE\text{-}LTF}T_{HE\text{-}LTF\text{-}SYM}, \text{ for an HE ER SU PPDU} \end{cases}$$

where

$T_{RL\text{-}SIG}$, $T_{HE\text{-}STF\text{-}T}$, $T_{HE\text{-}STF\text{-}NT}$, $T_{HE\text{-}LTF\text{-}SYM}$, $T_{HE\text{-}SIG\text{-}A}$, $T_{HE\text{-}SIG\text{-}A\text{-}R}$, and $T_{HE\text{-}SIG\text{-}B}$ are defined in Table 27-12

$N_{HE\text{-}SIG\text{-}B}$ and $N_{HE\text{-}LTF}$ are defined in Table 27-15

$b_{PE\text{-}Disambiguity}$  is the value indicated by the PE Disambiguity subfield of the HE-SIG-A field for an HE SU, HE ER SU, or HE MU PPDU or the value indicated by the PE Disambiguity subfield in the Common Info field in the Trigger frame (see Table 9-29g) for an HE TB PPDU

. . .

$$(27\text{-}122)$$

$$N_{MA} = \begin{cases} 0, \text{ if Doppler} = 0 \\ max\left(0, \left\lfloor \left( \frac{L\_LENGTH + 3 + m}{3} \times 4 - T_{HE\text{-}PREAMBLE} - (b_{PE\text{-}Diambiguity} + 2) \cdot T_{SYM} \right) / T_{MA} \right\rfloor \right), \text{ if Doppler} = 1 \end{cases}$$

22

(IEEE 802.11ax-2021)

64.   In the Accused Products, "the PE Disambiguity field is set based on the duration of a symbol of the data of the non-legacy physical layer frame and an increment of duration to set a value of the length information based on a duration of a symbol of the legacy physical layer frame."

If transmitting an HE TB PPDU for which the TXVECTOR parameter TRIGGER_METHOD is TRIGGER_FRAME, each transmitter of an HE TB PPDU shall append a PE field with a duration $T_{PE}$ calculated using Equation (27-114), except for an HE TB feedback NDP (see 27.3.4), which has $T_{PE} = 0$.

$$T_{PE} = \left\lceil \frac{\left(\frac{\text{LENGTH} + m + 3}{3} \times 4 - T_{\text{HE-PREAMBLE}}\right) - N_{SYM}T_{SYM} - N_{MA}N_{\text{HE-LTF}}T_{\text{HE-LTF-SYM}}}{4} \right\rceil \times 4 \qquad (27\text{-}114)$$

where
   $m = 2$ for an HE TB PPDU

   LENGTH        is the value indicated by the UL Length subfield in the Common Info field in the Trigger frame

   $T_{\text{HE-PREAMBLE}}$   is the value for an HE TB PPDU in Equation (27-121)

   $T_{\text{HE-STF-T}}$, $T_{\text{HE-LTF-SYM}}$, $T_{\text{RL-SIG}}$, and $T_{\text{HE-SIG-A}}$
                  are defined in Table 27-12

   $N_{MA}$        is the number of midamble periods in the current PPDU

$$N_{SYM} = \left\lfloor \left(\frac{\text{LENGTH} + m + 3}{3} \times 4 - T_{\text{HE-PREAMBLE}} - N_{MA}N_{\text{HE-LTF}}T_{\text{HE-LTF-SYM}}\right) / T_{SYM} \right\rfloor - b_{\text{PE-Disambiguity}} \qquad (27\text{-}115)$$

   $b_{\text{PE-Disambiguity}}$   is the value of the TXVECTOR parameter HE_TB_PE_DISAMBIGUITY

The PE Disambiguity field of the HE-SIG-A field for an HE SU, HE ER SU (see Table 27-18), or HE MU PPDU (see Table 27-20) shall be set to 1 if the condition in Equation (27-118) is met; otherwise, it shall be set to 0.

(IEEE 802.11ax-2021, § 27.3.13)

65.   Defendants have also knowingly and intentionally induced and contributed to infringement of the '421 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '421 patent and the infringing nature of the Accused Products at least because TLT had received the January 18, 2003, letter from Sisvel identifying the '421 patent as "essential to the 802.11ax standard" and because TP-Link was aware that it sold products that implement essential features of the standard.

66.    Despite this knowledge of the '421 patent, Defendants have continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '421 patent. Defendants have done so knowing and intending that their customers would commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '421 patent, thereby specifically intending for and inducing their customers to infringe the '421 patent through the customers' normal and customary use of the Accused Products.

67.    On information and belief, the Accused Products contain components that constitute a material part of the '421 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendants have sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '421 patent.

68.    On information and belief, Defendants' infringement has and continues to be willful. Defendants, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '421 patent.

69.    Defendants have induced, and continue to induce, infringement of the '421 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

70.     TP-Link and its customers benefit from the use of the inventions claimed in the '421 patent. On information and belief, these benefits include faster throughput, higher capacity, broader coverage, and improved coexistence when using Wi-Fi 6 communications.

71.     Wilus has been damaged by Defendants' willful infringement of the '421 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

72.     TP-Link's acts of infringement of the '421 patent have caused and continue to cause Wilus to suffer irreparable harm for which there is no adequate remedy at law. TP-Link's continued infringement causes harm to Wilus in the form of loss of goodwill, damage to reputation, loss of business opportunities, and inadequacy of money damages. Monetary damages are insufficient to compensate Wilus for these harms. Unless TP-Link's acts of infringement are permanently enjoined by this Court, TP-Link will continue to cause immediate and irreparable harm to Wilus for which there is no adequate remedy at law.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '233 PATENT

73.     Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

74.     On October 27, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,820,233, titled "Wireless communication method using frame aggregation and wireless communication terminal using same." Exhibit 1.

75.     The '233 patent claims devices and methods used to implement the MAC layer of Wi-Fi 6 wireless LANs.

76.     Wilus is the owner of the '233 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

77.     The claims of the '233 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '233 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     The '233 patent was the subject of reexamination number 90/015,487, requested on September 3, 2025. A reexamination certificate was issued on March 18, 2026, confirming the patentability of all ten claims.

79.     Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '233 patent, and Wilus is entitled to damages for Defendants' past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that TP-Link products practiced Wilus's '233 patent and offering to license Wilus's patents to TP-Link provided TP-Link with actual notice of infringement.

80.     Defendants have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '233 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '233 patent; and inducing and contributing to infringement by others of the claims of the '233 patent.

81.     The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including routers and other access point devices. On information and belief, Defendants use,

26

import, offer for sale, and sell Accused Products in the United States, with knowledge, expectation, specific intent, and foresight that customers, distributors, counterparties and intermediaries will infringe the '233 Patent by importing, selling, offering to sell, using, and/or making Accused Products in the United States.

82.     The Accused Products satisfy all claim limitations of one or more claims of the '233 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal":



**Archer AX55**

### AX3000 Dual Band Gigabit Wi-Fi 6 Router

- Next-Gen Gigabit Wi-Fi 6 Speed—2402 Mbps on 5 GHz and 574 Mbps on 2.4 GHz band ensure smoother streaming and faster downloads.[†]
- Connect More Devices—OFDMA technology increases capacity by 4 times to enable simultaneous transmission to more devices.
- Ultra-Low Latency—Enables more responsive gaming and video chatting.[‡]
- Expanded Wi-Fi Coverage—Four high-gain external antennas and Beamforming technology combine to extend strong, reliable Wi-Fi throughout your home.
- TP-Link HomeShield - Enhanced security defends against the latest cyber threats.[△]
- Improved Battery Life—Target Wake Time helps your devices to communicate more while consuming less power.
- Compatible with Alexa—Control your router via voice commands and make your life smarter and easier with Amazon Alexa.

(https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/)

83.     The Accused Products include "a transceiver" and "a processor":



(*Id.*)

84.    In the Accused Products, the processor is configured to "receive an aggregate MAC protocol data unit (A-MPDU) including one or more MAC service data units (MSDUs) or aggregate MSDUs (A-MSDUs) from each of a first plurality of users":

**10.3.2.13.3 Acknowledgment procedure for UL MU transmission**

An AP that receives frames from more than one STA that are part of an UL MU transmission (see 9.42.2) and that require an immediate acknowledgment (i.e., a QoS Data frame with Normal Ack or Implicit BAR ack policy or a Management frame other than an Action No Ack frame), shall send an immediate acknowledgment in either an SU PPDU (see 26.4.4.5) or an HE MU PPDU (see 26.4.4.6). The Multi-STA BlockAck frame may be transmitted in a non-HT PPDU, non-HT duplicate PPDU, HT PPDU, VHT PPDU, HE SU PPDU, HE ER SU PPDU, or HE MU PPDU. After the reception of an UL frame requiring acknowledgment, transmission of the DL acknowledgment shall commence after a SIFS, without regard to the busy/idle state of the medium. When an AP transmits an immediate acknowledgment in an HE MU PPDU in response to an A-MPDU sent in an HE TB PPDU, the AP should send it within the 20 MHz channel(s) where the pre-HE modulated fields of the HE TB PPDU sent by the STA are located. The immediate acknowledgment is an Ack frame, Compressed BlockAck frame, or Multi-STA BlockAck frame.

An example of a Multi-STA BlockAck frame acknowledgment in a non-HT PPDU, HT PPDU, VHT PPDU, HE SU PPDU, or HE ER SU PPDU is given in Figure 10-14c.



**Figure 10-14c—Example of UL MU transmissions with immediate Multi-STA BlockAck frame acknowledging MPDUs**

(IEEE 802.11ax-2021, § 10.3.2.13.3)

85.    In the Accused Products, the processor is configured to "transmit a block ACK for acknowledgment (ACK) transmission to a second plurality of users included in the first plurality of users in response to one or more MSDUs or A-MSDUs, wherein the block ACK includes one or more bitmap sets, and each of the one or more bitmap sets includes a starting sequence control field and a block ACK bitmap field according to a type of the block ACK indicated by a single block ACK control field, wherein the block ACK includes the single block ACK control field while including the starting sequence control field, wherein the block ACK bitmap field included in the each of the one or more bitmap sets indicates success or failure of reception of each of the one or more MPDUs or A-MPDU, wherein a length of the block ACK bitmap field is variable according to the type of the block ACK, wherein the block ACK control field indicates the type of the block ACK and a set of lengths of each of the block ACK bitmap field included in the one or more bitmap sets according to the type of the block ACK, wherein the length of the block ACK bitmap field is determined as one of the lengths included in the set of the block ACK control field, wherein a number of MSDUs or A-MSDUs capable of transmitting an ACK is determined

29

according to the length of the block ACK bitmap field.":

### 9.3.1.8.7 Multi-STA BlockAck variant

The Multi-STA BlockAck frame is supported if either UL MU or multi-TID A-MPDU operation is supported and acknowledges MPDUs carried in an HE TB PPDU or multi-STA multi-TID, multi-STA single-TID, or single-STA multi-TID A-MPDUs.

If B0 of the Fragment Number subfield of the Block Ack Starting Sequence Control subfield is 0, the BA Information field of the Multi-STA BlockAck frame contains an 8-octet, 16-octet, 32-octet, or 4-octet Block Ack Bitmap subfield depending on B2–B1 of the Fragment Number subfield as defined in Table 9-28c indicating the receive status of up to 64, 128, 256, or 32 MSDUs (or fragments thereof) and/or A-MSDUs (or fragments thereof), respectively. Each bit that is equal to 1 in the Block Ack Bitmap subfield acknowledges the reception of a single MSDU (or fragment thereof) or A-MSDU (or fragment thereof) in the order of sequence number with the first bit of the Block Ack Bitmap subfield corresponding to the MSDU or A-MSDU with the sequence number that matches the value of the Starting Sequence Number subfield of the Block Ack Starting Sequence Control subfield.

(IEEE 802.11ax-2021, § 9.3.1.8.7)

### 10.3.2.13.3 Acknowledgment procedure for UL MU transmission

An AP that receives frames from more than one STA that are part of an UL MU transmission (see 9.42.2) and that require an immediate acknowledgment (i.e., a QoS Data frame with Normal Ack or Implicit BAR ack policy or a Management frame other than an Action No Ack frame), shall send an immediate acknowledgment in either an SU PPDU (see 26.4.4.5) or an HE MU PPDU (see 26.4.4.6). The Multi-STA BlockAck frame may be transmitted in a non-HT PPDU, non-HT duplicate PPDU, HT PPDU, VHT PPDU, HE SU PPDU, HE ER SU PPDU, or HE MU PPDU. After the reception of an UL frame requiring acknowledgment, transmission of the DL acknowledgment shall commence after a SIFS, without regard to the busy/idle state of the medium. When an AP transmits an immediate acknowledgment in an HE MU PPDU in response to an A-MPDU sent in an HE TB PPDU, the AP should send it within the 20 MHz channel(s) where the pre-HE modulated fields of the HE TB PPDU sent by the STA are located. The immediate acknowledgment is an Ack frame, Compressed BlockAck frame, or Multi-STA BlockAck frame.

An example of a Multi-STA BlockAck frame acknowledgment in a non-HT PPDU, HT PPDU, VHT PPDU, HE SU PPDU, or HE ER SU PPDU is given in Figure 10-14c.



**Figure 10-14c—Example of UL MU transmissions with
immediate Multi-STA BlockAck frame acknowledging MPDUs**

(IEEE 802.11ax-2021, § 10.3.2.13.3)

If the AID11 subfield of the AID TID Info subfield is not 2045, then the Per AID TID Info subfield has the format shown in Figure 9-47c.



| AID TID Info | Block Ack Starting Sequence Control | Block Ack Bitmap |
|---|---|---|
| Octets: 2 | 0 or 2 | 0, 4, 8, 16 or 32 |

**Figure 9-47c—Per AID TID Info subfield format if the AID11 subfield is not 2045**

**Table 9-28c—Fragment Number subfield encoding for the Multi-STA BlockAck variant**

| Fragment Number subfield | | | Fragmentation level 3 (ON/OFF) | Block Ack Bitmap subfield length (octets) | Maximum number of MSDUs/A-MSDUs that can be acknowledged |
|---|---|---|---|---|---|
| B3 | B2–B1 | B0 | | | |
| 0 | 0 | 0 | OFF | 8 | 64 |
| 0 | 1 | 0 | | 16 | 128 |
| 0 | 2 | 0 | | 32 | 256 |
| 0 | 3 | 0 | | 4 | 32 |
| 0 | 0 | 1 | ON | 8 | 16 |
| 0 | 1 | 1 | | 16 | 32 |
| 0 | 2 | 1 | | 32 | 64 |
| 0 | 3 | 1 | | 4 | 8 |

(IEEE 802.11ax-2021, § 9.3.1.8.7)

*Change Figure 9-42 as follows:*



| B0 | ~~B1~~ | ~~B2~~ | ~~B3~~ B4 | B1 B4 | B5 B11 | B12 B15 |
|---|---|---|---|---|---|---|
| Reserved | ~~Multi-TID~~ | ~~Compressed Bitmap~~ | ~~GCR Mode~~ | BA Type | Reserved | TID_INFO |
| Bits: 1 | ~~1~~ | ~~1~~ | ~~2~~ | 4 | 7 | 4 |

**Figure 9-42—BA Control field format**

*Change the sixth and seventh paragraphs in 9.3.1.8.1 as follows:*

The ~~values of the Multi-TID, Compressed Bitmap, and GCR Mode subfields of~~ BA Type subfield in the BA Control field ~~determine~~ indicates the BlockAck frame variant~~s represented,~~ as ~~indicated~~ defined in Table 9-28.

NOTE—Reference to "a BlockAck" frame without any other qualification from other subclauses applies to any of the variants, unless specific exclusions are called out.

31

**Table 9-28—BlockAck frame variant encoding**

| BA Type | BlockAck frame variant |
|---------|------------------------|
| 0 | Reserved |
| 1 | Extended Compressed |
| 2 | Compressed |
| 3 | Multi-TID |
| 4–5 | Reserved |
| 6 | GCR |
| 7–9 | Reserved |
| 10 | GLK-GCR |
| 11 | Multi-STA |
| 12–15 | Reserved |

(IEEE 802.11ax-2021, § 9.3.1.8.1)

The Fragment Number subfield of the Block Ack Starting Sequence Control field is set as defined in Table 9-28a. The Fragment Number subfield of the Block Ack Starting Sequence Control subfield is set to all 0s if the Compressed BlockAck frame is sent to or from a non-HE STA.

**Table 9-28a—Fragment Number subfield encoding for the Compressed BlockAck variant**

| Fragment Number subfield | | | Fragmentation level 3 (ON/OFF) | Block Ack Bitmap subfield length (octets) | Maximum number of MSDUs/A-MSDUs that can be acknowledged |
|------|-------|------|------|------|------|
| **B3** | **B2–B1** | **B0** | | | |
| 0 | 0 | 0 | OFF | 8 | 64 |
| 0 | 1 | 0 | | Reserved | Reserved |
| 0 | 2 | 0 | | 32 | 256 |
| 0 | 3 | 0 | | Reserved | Reserved |
| 0 | 0 | 1 | ON | 8 | 16 |
| 0 | 1 | 1 | | Reserved | Reserved |
| 0 | 2 | 1 | | 32 | 64 |
| 0 | 3 | 1 | | Reserved | Reserved |
| 1 | Any | Any | | Reserved | Reserved |
| NOTE—A Compressed BlockAck frame with B0 of the Fragment Number subfield set to 1 is not sent to an HE STA whose Dynamic Fragmentation Support subfield in the HE Capabilities element it transmits is not set to 3 (see 26.3). | | | | | |

If B0 of the Fragment Number subfield is 0, the Block Ack Bitmap subfield of the BA Information field of the Compressed BlockAck frame indicates the receive status of up to 64 or 256 MSDUs and/or A-MSDUs depending upon the value of B2–B1 in the Fragment Number subfield as shown in Table 9-28a, ~~The Block Ack Bitmap subfield of the BA Information field of the Compressed BlockAck frame is used to indicate the received status of up to 64 entries, where each entry represents an MSDU or an A-MSDU.~~ Each bit that is equal to 1 in the compressed Block Ack Bitmap subfield acknowledges the reception of a single MSDU or A-MSDU in the order of sequence number, with the first bit of the Block Ack Bitmap subfield corresponding to the MSDU (or fragment thereof) or A-MSDU (or fragment thereof) with the sequence number that matches the Starting Sequence Number subfield of the Block Ack Starting Sequence Control subfield.

32

(IEEE 802.11ax-2021, § 9.3.1.8.2)

The BA Information field of the Multi-STA BlockAck frame comprises one or more Per AID TID Info subfields as defined in Figure 9-47a.



**Figure 9-47a—BA Information field format (Multi-STA BlockAck)**

(IEEE 802.11ax-2021, § 9.3.1.8.7)

86.     Defendants have also knowingly and intentionally induced and contributed to infringement of the '233 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge or were willfully blind of the '233 patent and the infringing nature of the Accused Products at least because TLT had received the April 8, 2022 letter from Sisvel identifying the '233 patent as "essential to the 802.11ax standard" and identifying examples of TP-Link products that implement essential features of the standard.

87.     Despite this knowledge of the '233 patent, Defendants have continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '233 patent. Defendants have done so knowing and intending that their customers would commit these infringing acts. Defendants have also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '233 patent, thereby specifically intending for and inducing their customers to infringe the '233 patent through the customers' normal and customary use of the Accused Products.

88.     On information and belief, the Accused Products contain components that constitute a material part of the '233 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendants have sold,

offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '233 patent.

89.    On information and belief, Defendants' infringement has and continues to be willful. Defendants, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '233 patent.

90.    Defendants have induced, and continue to induce, infringement of the '233 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

91.    TP-Link and its customers benefit from the use of the inventions claimed in the '233 patent. On information and belief, these benefits include faster throughput, higher capacity, broader coverage, and improved coexistence when using Wi-Fi 6 communications.

92.    Wilus has been damaged by Defendants' willful infringement of the '233 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

93.    TP-Link's acts of infringement of the '233 patent have caused and continue to cause Wilus to suffer irreparable harm for which there is no adequate remedy at law. TP-Link's continued infringement causes harm to Wilus in the form of loss of goodwill, damage to reputation, loss of business opportunities, and inadequacy of money damages. Monetary damages are insufficient to compensate Wilus for these harms. Unless TP-Link's acts of infringement are permanently

enjoined by this Court, TP-Link will continue to cause immediate and irreparable harm to Wilus for which there is no adequate remedy at law.

## JURY DEMAND

94.    Wilus demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## RELIEF REQUESTED

Wilus prays for the following relief:

A.    A judgment in favor of Wilus that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.    A judgment and order requiring Defendants to pay Wilus past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C.    A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

D.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Wilus, including, without limitation, pre-judgment and post-judgment interest;

E.    A judgement that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

F.    A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Wilus' reasonable attorney's fees and costs; and

G.    Any and all other relief to which Wilus may be entitled.

Dated:   April 10, 2026

Respectfully submitted,

/s/ Marc Fenster
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Adam S. Hoffman
CA State Bar No. 218740
Email: ahoffman@raklaw.com
Philip X. Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Linjun Xu
CA State Bar No. 307667
Email: lxu@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Mackenzie Paladino
NY State Bar No. 6039366
Email: mpaladino@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc.**

36